KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

Will Kemp, Esquire
**KEMP JONES, LLP**
Wells Fargo Tower, 17th Floor
3800 Howard Hughes Parkway
Las Vegas, NV 89169
Telephone: 702-385-6000
Facsimile: 702-385-6001
a.hayslett@kempjones.com

Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
krunfeld@golombhonik.com

Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
flonger@lfslaw.com
dlevin@lfsblaw.com

Aaron Rihn, Esq.
**ROBERT PIERCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel “Dee” Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| GAMING ENTERTAINMENT TOUCH TECH,<br><br>*Plaintiff*,<br><br>v.<br><br>OHIO CASUALTY INSURANCE COMPANY, OHIO SECURITY INSURANCE COMPANY, and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>*Defendants*. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

Plaintiff, Gaming Entertainment Touch Tech ("Plaintiff" or "Gaming Entertainment"), brings this Complaint alleging relief against Defendants, Ohio Casualty Insurance Company ("Ohio Casualty"), Ohio Security Insurance Company ("Ohio Security"), and Liberty Mutual Insurance Company ("Liberty"), and avers as follows:

**NATURE OF THE CASE**

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendants.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down on March 17, 2020, Plaintiff's gaming business has suffered business loss.

3. Plaintiff's insurance policy provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

**JURISDICTION**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendants. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6. This Court has personal jurisdiction over Defendants Ohio Casualty, Ohio Security, and Liberty. Defendants all purposefully availed themselves of jurisdiction by selling policies for business loss to Plaintiff in Nevada.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendants sold the Policy subject to this dispute in this District. Further, Plaintiff's business loss which is the subject of this dispute occurred in this District.

/ / /

/ / /

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

**PARTIES**

8. Plaintiff Gaming Entertainment owns and operates a gaming business in the State of Nevada. Plaintiff's principal place of business is 4760 Polaris Ave., Unit B, Las Vegas, Nevada 89103 ("Insured Property").

9. Defendant Ohio Casualty is an insurance carrier that provides business interruption insurance to Plaintiff. Ohio Casualty is headquartered at 6230 Old Dublin Lane, Suite 200, Columbia, Maryland 21046.

10. Defendant Ohio Security provided business loss insurance to Plaintiff. Ohio Security is headquartered at 175 Berkeley Street, Boston, Massachusetts 02216.

11. Defendant Liberty provided business loss insurance to Plaintiff. Liberty is headquartered at 175 Berkeley Street, Boston, Massachusetts 02116.

12. At all relevant times, Defendants issued a policy to Plaintiff to cover business interruption loss from October 23, 2019 until October 23, 2020. The policy number is BZS605136471. This Policy were intended to cover losses to business interruption. *See* Declaration, attached hereto as Exhibit 1.

13. The Policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

14. Plaintiff submitted a claim for a date of loss pursuant to its policy seeking coverage under these policies. Defendants rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff purportedly is not entitled to coverage for the losses and damages.

**FACTUAL BACKGROUND**

**I. Insurance Coverage**

15. Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

/ / /

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

16. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

17. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means coverage for all covered losses, including but not limited to direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

18. The Policy also covers for damages resulting from business interruption when there is property damage. The exclusion for viruses does not apply to this pandemic.

19. Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

20. Plaintiff has submitted a claim to its insurance carrier related to such losses. On April 24, 2020, Defendants rejected Plaintiff's claim. Defendant asserted Plaintiff was not covered because of lack of property damage.

**II. The Coronavirus Pandemic**

21. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the business.

22. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

23. Most of Plaintiff's products are packaged in cardboard boxes, and many of its products are shipped or imported from Asia, South America, Latin America, and Europe, where the COVID-19 pandemic is also ongoing, thus hindering the continuation of its business.

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

24. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

25. Plaintiff's business has 15 employees, thus requiring Plaintiff's employees to work in staggered part-time shifts.

26. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

27. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**III. Civil Authority**

28. On March 12, 2020, the State of Nevada declared a state of emergency for the entire state of Nevada as a result of COVID-19.

29. On March 17, 2020, the State of Nevada set restrictions on large gatherings and shut down all non-essential businesses.

30. On March 24, 2020, the State of Nevada banned any gathering of more than 10 people a result of COVID-19. This order has been extended to May 30, 2020.

31. On April 1, 2020, the State of Nevada issues a stay-at-home order for individuals.

32. All of the above orders were extended to May 9, 2020.

33. Even after Nevada allows Plaintiff's to operate its business it is required to implement social distancing guidelines which will limit the amount of customers Plaintiff may serve.

34. Plaintiff's business suffered a total loss in revenue following the closure of all of its locations by March 19, 2020.

35. Plaintiff's business was unable to operate due to the orders for public safety issued by the State of Nevada.

/ / /

36. Because Plaintiff's business serves the casino and slot machine market, which businesses are still closed, Plaintiff's business has been interrupted.

37. Because Nevada remains a Natural and Federal Disaster Zone, Plaintiff has been unable to continue serving or collecting payments from its customers on shipments made before the Governor's declaration.

38. Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be./cMeG5C9TiU (last visited on April 17, 2020) (emphasis added).

39. The President is articulating a few core points:

a. Business interruption is a common type of insurance.

b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

    KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

c. This pandemic should be covered unless there is a specific exclusion for pandemics.

d. If insurers deny coverage, they would be acting in bad faith.

40. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**IV. Impact on Plaintiff**

41. As a result of the Orders referenced herein, Plaintiff shut its doors to its business.

42. Plaintiff's business loss occurred when the State of Nevada issues its order on March 17, 2020 closing non-essential businesses.

43. Prior to March 17, 2020, Plaintiff was open. Plaintiff's business operates in closed environment. is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the business, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

44. Businesses like the Plaintiff's are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

45. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff in close proximity to the property and to one another and because the nature of the business and activity exposes to high level of respiratory droplets and fomites being released into the air of the property.

46. The virus is physically impacting Plaintiff. Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

47. A declaratory judgment determining that the coverage provided under the Policy exist and is necessary so as to prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

**CAUSE OF ACTION**

**DECLARATORY RELIEF**

48. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

49. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

50. An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendants dispute and deny that:

a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here. It does not apply to this pandemic;

d. The Orders trigger coverage;

e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in Nevada due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

/ / /

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

51. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

52. Plaintiff further seeks a Declaratory Judgment to affirm that the Order triggers coverage.

53. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of Nevada due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Nevada due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

f. For such other relief as the Court may deem proper.

/ / /

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

**TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: May 20, 2020

Respectfully submitted,

*/s/ Will Kemp*

Will Kemp, Esquire
**KEMP JONES, LLP**
Wells Fargo Tower, 17th Floor
3800 Howard Hughes Parkway
Las Vegas, NV 89169
Telephone: 702-385-6000
Facsimile: 702-385-6001

Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PIERCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel “Dee” Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
***Counsel for Plaintiff***

# EXHIBIT 1



Liberty Mutual Insurance

PO Box 515097
Los Angeles, CA 90051
(619) 744-6009
(888) 268-8840 Fax

April 24, 2020

Gaming Entertainment Touch Tech
Attention: Trent Looney
4760 Polaris Ave., Unit B
Las Vegas, NV 89103

RE:

| | |
|---|---|
| First Named Insured: | Gaming Entertainment Touch Tech |
| Party Seeking Coverage: | Gaming Entertainment Touch Tech |
| Claim No. | 23809457 |
| Underwriting Company: | Ohio Security |

Dear Trent Looney:

This letter will serve to provide you with our coverage position under *Section II – Liability* of your *Businessowners Coverage Form* for the above-referenced claim. We will address our coverage position with respect to *Section I – Property* by a separate letter. On the basis of the information provided to us to date and our investigation, it appears that we have no duty to indemnify Gaming Entertainment Touch Tech (hereinafter "Gaming Entertainment") and therefore, we do not anticipate paying or reimbursing Gaming Entertainment in connection with this claim.

**THE CLAIM**

A claim was made by Gaming Entertainment under their liability policy for business interruption due to the coronavirus (COVID-19) pandemic.

**THE POLICY**

Ohio Security issued the following liability policy to Gaming Entertainment (hereinafter "Policy"):

Policy Number: BZS605136471
Effective Dates: 10/23/2019 to 10/23/2020

The **Businessowners Coverage Form (BP 00 03 07 13)** for the above policy period states in relevant part as follows:

**SECTION II – LIABILITY**

**A. Coverages**

**1. Business Liability**

**a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.**

* * *

Relevant terms used in the Policy are defined as follows:

**F. Liability And Medical Expenses Definitions**

**3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.**

**13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

**14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:**

**a. False arrest, detention or imprisonment;**

**b. Malicious prosecution;**

**c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;**

**d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;**

**e. Oral or written publication, in any manner, of material that violates a person's right of privacy;**

**f. The use of another's advertising idea in your "advertisement"; or**

**g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".**

**17. "Property damage" means:**

**a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**

**b. Loss of use of tangible property that is not physically injured. All such loss or use shall be deemed to occur at the time of the "occurrence" that caused it.**

* * *

The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent, the provisions set forth above in no

way replace the provisions of the actual Policy issued. If you have any questions regarding the terms, definitions, exclusions, conditions, endorsements and/or limits of liability contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

**APPLICATION OF POLICY/COVERAGE POSITION**

Based upon the information known to us, it appears we have no duty to indemnify Gaming Entertainment and therefore, we do not anticipate paying or reimbursing Gaming Entertainment in connection with this claim for the following reasons:

- The Policy potentially applies to those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" as defined by the Policy. Since this matter does not seek actual or alleged damages that the insured is legally obligated to pay, there is no insurance coverage with respect to this claim under the liability policy.

- The Policy potentially applies to those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" as defined by the Policy. Since this matter does not seek actual or alleged damages that the insured is legally obligated to pay, there is no insurance coverage with respect to this claim under the liability policy.

If you have any additional information you would like us to consider concerning this claim, please forward it to us so that we can determine our obligations, if any, based upon the additional information.

While we have sought to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be construed as a waiver of any other right or basis which we may have to deny coverage, and we reserve all rights in this regard.

Should you have any questions or comments concerning this letter, please feel free to call or email me. My contact information is below.

Sincerely,

*Stephen Scott*

Stephen Scott
Claims Resolution Specialist III
Liberty Mutual Insurance – GRM U.S. Casualty Claims
Phone: (619) 744-6009
Email: stephen.scott@libertymutual.com

cc:   Venuto Insurance Services, LLC
      58 Carolina Cherry Drive
      Las Vegas, NV  89141

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** - Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

© Insurance Services Office, Inc., 2012

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

- Job Classifications; or
- Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

- Job Classifications; or
- Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

© Insurance Services Office, Inc., 2012